Bryan Hurlbutt (ISB # 8501)
Laurence ("Laird") J. Lucas (ISB # 4733)
ADVOCATES FOR THE WEST
P.O. Box 1612
Boise, ID 83701
(208) 342-7024
(208) 342-8286 (fax)
bhurlbutt@advocateswest.org
llucas@advocateswest.org

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IDAHO CONSERVATION LEAGUE, | No. 1-18-cv-44-BLW |
| Plaintiff, | **DECLARATION OF LAIRD J. LUCAS** |
| vs. | |
| U.S. FOREST SERVICE, | |
| Defendant. | |

I, Laurence ("Laird") J. Lucas, declare:

1.     I am co-counsel of record for Plaintiff Idaho Conservation League in this matter. I reside in Boise, Idaho. The following facts are personally known to me, and if called as a witness I would and could truthfully testify thereto.

**Personal Background and Qualifications.**

2.     I received my J.D. from Yale Law School in June 1986, and before that an M.A. in International Studies from Yale Graduate School in 1981.

3.     In September 1986, I was admitted to the State Bar of California, and to the U.S. Court of Appeals for the Ninth Circuit and the U.S. District Court for the Northern District of California. From fall 1986 to summer 1987, I practiced law with the

firm Farella, Braun and Martel in San Francisco, handling a wide range of complex civil litigation matters in both state and federal courts.

4.      During 1987-88, I served as a law clerk to the Hon. William Wayne Justice, Chief Judge of the U.S. District Court for the Eastern District of Texas. I was admitted at that time to the U.S. District Court for the Eastern District of Texas.

5.      From 1989-93, I worked with the San Francisco law firm Keker & Brockett (now Keker, Van Nest & Peters), where my practice included complex civil and federal criminal matters. I also handled some pro bono environmental cases. My final billing rate when I left the Keker firm in 1993 was $200 per hour.

6.      In 1993, I moved to Boise, Idaho to work as a staff attorney with the Land and Water Fund of the Rockies ("LAW Fund"), a nonprofit environmental law organization, where I ran its Idaho office.  In that position, I represented conservation groups in Idaho and other western states on water, public lands, endangered species, and other natural resource matters, principally in federal courts. I was admitted to the Idaho State Bar in September 1993, and to the U.S. District Court for the District of Idaho at the same time.

7.      In 2001, I left employment as a staff attorney with the LAW Fund and began handling litigation through my own law office, which is mostly devoted to public interest environmental law representing conservation groups in water, public lands, environmental, and natural resources matters, although I remained on contract with the LAW Fund to continue handling certain matters.

8.      In 2003, I founded and still serve as Executive Director of *Advocates for the West*, which is a public interest, nonprofit environmental law firm that works on

LUCAS DECLARATION -- 2

public lands, water, wildlife, and similar issues throughout the West. *Advocates for the West* generally provides free legal counseling and representation to non-profit conservation groups on public lands and environmental issues of high public interest. As Executive Director, I provide fundraising and management services, including strategic development and oversight of staff, consultants, volunteers and others; and I also represent our clients in federal and state court litigation matters.

9.      During the past twenty-six years since I first came to Idaho, I have focused my legal practice on public lands, water, and similar environmental and natural resources litigation on behalf of conservation clients. I have handled many dozens of cases, mostly in federal courts, including Idaho, New Mexico, Nevada, Oregon, Washington, Montana, Utah, Wyoming, California, and Washington, D.C. I have acted as lead counsel or co-counsel in cases involving federal environmental laws, including dozens of cases challenging federal agency public lands management in Idaho, Nevada, Utah, Wyoming, and Oregon, many of them before this Court. I have a strong track record of success in successfully prosecuting public interest environmental law cases, and have won many published and unpublished decisions.

10.      I frequently consult with conservation groups and other environmental attorneys about public lands, endangered species, water, and similar issues across the West. I have also delivered papers and presentations on environmental laws and litigation before many legal, professional, educational and other groups, such as the American Bar Association annual water conference; seminars and conferences at a various law schools and undergraduate schools; Idaho CLE events; Federal Bar Association and Idaho Bar Association conferences and CLEs, and others. I was named a "Mountain States Super-

Lawyer" for environmental litigation every year between 2007 and 2017, and have received other honors and awards.

11.     Through my experiences as a public interest environmental attorney, I frequently seek to recruit and work with other counsel from the private bar in cases involving endangered species, public lands, water, or other similar environmental issues on behalf of conservation groups. I also have extensive contacts and communications with conservation group staff and public interest environmental attorneys throughout the nation, particularly in the West. I actively follow legal developments in courts across the West, and the nation, concerning endangered species and public lands law, and similar environmental and natural resource law topics. I have also observed and litigated against many government and private practice lawyers that specialize in public lands, water, endangered species, and other environmental or natural resource law. I am thus very familiar with the prevailing standards and practices of the legal community in this area of the law, and with the conduct of litigation over such environmental law cases.

12.     It is extremely difficult for non-profit conservation groups to obtain first-rate legal representation from the private bar in Idaho, because very few members of the private bar have the necessary education, training, knowledge, and skills to successfully prosecute environmental cases (which are typically brought against federal or state agencies); and those attorneys who do have such skills and abilities typically work for resource-related industries or state/local governments, and are either unwilling to represent or conflicted out from representing conservation group clients. My own efforts and the efforts of staff attorneys with *Advocates for the West* are intended to assist non-

profit conservation groups like ICL here in obtaining legal services not otherwise available to them.

13.     I and Bryan Hurlutt, an *Advocates for the West* staff attorney, represented ICL in this matter on the basis of a written representation agreement which provides that Plaintiff's counsel would not be paid by Plaintiff for their legal services in this matter, but would retain any attorney fees that might be awarded by the Court or otherwise obtained through settlement.

**Background And Qualifications Of Mr. Hurlbutt.**

14.     Mr. Hurlbutt and I handled this matter on behalf of Plaintiff, and we were assisted by other *Advocates for the West* staff attorneys, a public interest fellow, and summer law clerks during different parts of the case.  However, a fee award is not sought for the services provided by these other attorneys and clerks, in order to ensure the fee claim here is reasonable and consistent with the exercise of billing judgment.

15.     As Executive Director of *Advocates for the West*, I supervise the work of Bryan Hurlbutt, our staff attorney who appeared as co-counsel of record in this matter and acted as the lead attorney for much of the case. I am very familiar with Mr. Hurlbutt's education, legal training and experiences, and his skills as an environmental practitioner.

16.     Mr. Hurlbutt grew up in Twin Falls, Idaho, and graduated from Colorado College in 2004 with a degree in physics. He graduated from Columbia Law School in 2010, and was admitted to the Idaho State Bar in September 2010.  Following law school, Mr. Hurlbutt served as a judicial law clerk for Hon. Roger Burdick on the Idaho Supreme

Court in 2010-2011. Mr. Hurlbutt joined *Advocates for the West* as a staff attorney in late 2011. I have supervised Mr. Hurlbutt's work as a staff attorney since that time.

17.     Through his employment with *Advocates for the West*, Mr. Hurlbutt has researched, developed, and successfully prosecuted numerous environmental cases under federal environmental laws, including the Endangered Species Act (ESA), at issue in this case.  As part of Mr. Hulbutt's work, he confers closely with Idaho Conservation League about water issues in Idaho, including public land diversions that affect ESA-listed salmon, steelhead and bull trout. He has helped research and develop numerous notice of intent letters under the ESA and other statutes; has negotiated numerous out-of-court settlements to avoid litigation in response to many of them; and has brought numerous successful cases in the District of Idaho over mining and other environmental threats.

18.     Mr. Hurlbutt thus has substantial experience and expertise in federal environmental litigation, and has brought and won (or settled favorably) numerous cases in the District of Idaho and other courts. He has exceptional legal skills and experience in prosecuting environmental cases, particularly for an attorney of his relatively young age and experience.

19.     In my opinion, the hourly rates requested for Mr. Hurlbutt's legal services in this matter as set forth in the Lodestar Calculations below, and as explained further below, are consistent with, or indeed below, the rates charged by attorneys in private practice in Boise that have similar experience, skills, and expertise as Mr. Hurlbutt.

**Explanation of Lodestar Calculations**

20.     As Executive Director of *Advocates for the West* and the most senior attorney for Plaintiff, I supervised the preparation and prosecution of this matter, and am

thoroughly familiar with these proceedings and how they were handled by Plaintiff's counsel.

21.     At all times, Plaintif's counsel sought to prosecute this matter reasonably and efficiently, and without needless duplication of attorney time and efforts, including in strategy development, legal and factual research, drafting pleadings, motions and briefings, and presenting oral arguments and testimony at the hearings in this matter.

22.     Mr. Hurlbutt generally acted as the lead attorney for Plaintiffs in the contempt proceedings, in order to utilize the more junior attorney on the litigation team, wherever appropriate. While I handled the summary judgment argument in June 2019, that was because of my familiarity with other cases before this Court involving ESA claims over public land diversions in the Upper Salmon River watershed.  Otherwise, Mr. Hurlbutt was the attorney primarily responsible for obtaining and reviewing relevant documents obtained from the Forest Service and other agencies concerning the Sawtooth National Forest diversions at issue in this case; participating in negotiations seeking to resolve ICL's concerns about the lack of ESA consultation informally before the case was filed; researching and drafting the complaint and Plaintiff's summary judgment briefings; and communicating with the Forest Service and Department of Justice during the course of the proceedings, including over remedies after the Court issued its June 2019 summary judgment decision for ICL.

23.     I was personally involved in helping to develop and prosecute the case from the outset, and handled the summary judgment argument, as noted above. I conferred closely with Mr. Hurlbutt, supervised and edited pleadings and briefings, and

communicated with ICL staff over strategy and settlement throughout the course of the litigation.

24.     I kept contemporaneous time records of my work on this matter, as did Mr. Hurlbutt. I obtained his timesheets for services performed during the course of this litigation; and I reviewed and redacted his and my timesheets to eliminate time that might be unnecessary, redundant, duplicative, or otherwise not directly related to the litigation, and thereby sought to ensure that the requested hours are all reasonable and necessary.

25.     Attached hereto as Exhibits 1-2 are the redacted timesheets for myself and Mr. Hurlbutt, respectively, documenting the time and tasks performed by Plaintiff's counsel in connection with this case to date in this matter, for which an award of attorney fees is sought.

26.     Based on the attached timesheets (Exhibits 1-2), Plaintiff seeks an award of reasonable attorney fees for the legal services provided by Mr. Hurlbutt and myself, utilizing the "lodestar" approach under which hours devoted by each attorney during each year of this litigation are multiplied by reasonable hourly rates for that year.

27.     The lodestar calculations for the requested award of attorney fees from the attached timesheets (Exhibits 1-2) are as follows:

### SAWTOOTH DIVERSIONS LITIGATION
### FEE LODESTAR CALCULATIONS

| ATTORNEY | HOURS AND RATES | AMOUNTS |
|---|---|---|
| **Laird J. Lucas** | | |
| L. Lucas, 2016 | 1.0 hours @ $425/hour = | $     425.00 |
| L. Lucas, 2017 | 5.5 hours @ $425/hour = | $  2,337.50 |
| L. Lucas, 2018 | 18.9 hours @ $450/hour = | $  8,505.00 |
| L. Lucas, 2019 | 28.9 hours @ $450/hour = | $ 13,005.00 |
| **L. Lucas, Total** | **54.3 hours (rates above) =** | **$ 24,272.50** |

**Bryan Hurlbutt**

| | | |
|---|---|---|
| B. Hurlbutt, 2014 | 9.1 hours @ $190/hour = | $ 1,729.00 |
| B. Hurlbutt, 2015 | 6.0 hours @ $200/hour = | $ 1,200.00 |
| B. Hurlbutt, 2016 | 16.0 hours @ $225/hour = | $ 3,600.00 |
| B. Hurlbutt, 2017 | 45.9 hours @ $225/hour = | $ 10,327.50 |
| B. Hurlbutt, 2018 | 142.1 hours @ $250/hour = | $ 35,525.00 |
| B. Hurlbutt, 2019 | 137.9 hours @ $250/hour = | $ 34,475.00 |
| **B. Hurlbutt, Total** | **357.0 hours (rates above) =** | **$ 86,856.50** |

**TOTAL ATTORNEY FEES**                           **$ 111,129.00**

28.     In my opinion, these hours and tasks reflected in the accompanying timesheets (Exhibits 1-2) were all necessary to the successful investigation, development, prosecution, and resolution of this case, and are reasonable in light of the facts, legal issues, and procedural aspects of this case.

29.     Based on my experience previously working in private law firms, and my knowledge of other fee claims submitted in similar cases that I am aware of, I believe that the time spent by Plaintiff's counsel here, for which a fee award is requested, is highly reasonable and would likely be far less in terms of hours and total costs than had a private law firm handled the matter.

**Justification For Requested Hourly Rates**

30.     Through my 25+ years of environmental law practice and other professional activities, as described above, I am familiar with hourly rates charged by attorneys in Idaho as well as many other parts of the country. In my opinion, the requested hourly rates set forth above are reasonable in light of the skills, education, training, expertise, and abilities of the counsel listed above, considering the rates charged by comparable attorneys in the Boise area.

31.     As set forth the lodestar calculations above, my requested rates begin at $425 per hour for services provided in 2016 and 2017, and increase to $450 per hour for

LUCAS DECLARATION -- 9

services provided in 2018 and 2019. As detailed further below, these hourly rates are consistent with rates that I have charged, been awarded, or received through settlement in other recent cases within the District of Idaho; and these rates are consistent with (or actually below) rates charged by attorneys in Idaho who have comparable skills, experience, and track record as I have for the respective years in the lodestar calculations.

32.     Likewise, the requested rates in the lodestar calculations above for Mr. Hurlbutt are consistent with rates that he has received through settlement in other recent cases within the District of Idaho, and are consistent with (or actually below) rates charged by attorneys in Idaho who have comparable skills, experience, and track record as he has for the respective years in the lodestar calculations.

33.     I and other attorneys at *Advocates for the West* usually resolve attorney fee claims informally through settlement, and thus this Court has not had to rule on the reasonableness of our hourly rates in very many cases. I believe, however, that the rates set forth above in the lodestar calculations are consistent with hourly rates that were sought and achieved in numerous settlements of fee claims in cases before this Court during 2008-2019, including but not limited to the following:

- Sage grouse ESA listing litigation, *WWP v. US Fish and Wildlife Service*, No. 06-cv-277-BLW (D. Idaho);

- BLM CE litigation, *WWP v. Lane*, No. 1:07-cv-394-BLW (D. Idaho);

-  Bighorn Sheep rider, *WWP et al v. USFS*, No. 1:12-cv-286-BLW (D. Idaho);

- Idaho water quality standards, *Idaho Conservation League v. EPA*, No. 1:12-cv-2-REB (D. Idaho);

- Hwy 12 mega-loads I, *Idaho Rivers United v. US Forest Service*,11-cv-095-BLW (D. Idaho);

LUCAS DECLARATION -- 10

- Cumo Mine I, *Idaho Conservation League et al v. US Forest Service*, No. 1:11-cv-341-EJL (D. Idaho);

- Travel Planning Rule, *Winter Wildlands v. US Forest Service*, No. 1:11-cv-586-REB (D. Idaho);

- Wildlife Services FOIA litigation, *WWP v. USDA-APHIS Wildlife Services*, No. 1:15-cv-219-BLW (D. Idaho);

- Selway Road, *Idaho Rivers United v. Hudson*. No. 3:15-cv-169-BLW (D. Idaho);

- Cumo Mine II, *Idaho Conservation League et. al. v. USFS,* No. 16-cv-025-EJL (D. Idaho);

- Golden Hand Mine, *Idaho Conservation League et al v. Lannom,* No. 1:15-cv-246-BLW (D. Idaho);

- Hwy 12 mega-loads II, *Nez Perce Tribe and Idaho Rivers United v. Forest Service,* No. 3:13-cv-448 (D. Idaho);

- Upper and Lower East Fork Allotments, *Western Watersheds Project v. U.S. Forest Service*, No. 1:16-cv-457-BLW (D.Idaho);

- Snakey-Kelley Bighorn Sheep, *Western Watershed Project et al. v. Forest Service*, No. 17-cv-434-CWD (D.Idaho)

- BLM RMPs, *Western Watersheds Project v. Salazar, et al.*, No. 1:08-cv-516-BLW (D. Idaho);

- ITD Motor Waste Wells, *Idaho Conservation League v. Ness et al.*, No. 1:17-cv-081-DCN (D. Idaho);

- Triumph Mine, *Idaho Conservation League v. Groeschl et al*, No. 18-cv-403-EJL (D. Idaho).

34.     In July 2017, U.S. Magistrate Judge Candy Dale of this Court issued an attorney fee decision in litigation challenging the Johnson Bar Salvage logging project, which approved rates of $400/hour in 2015 and $425/hour in 2016 for my legal services. *See* Order On Plaintiffs' Amended Motion For Attorney Fees, *Idaho Rivers United v.*

*Probert*, No. 3:16-cv-102-CWD (D. Idaho, July 21, 2017), ECF No. 75. That fee decision

supports my requested hourly rates and the rates sought for Mr. Hurlbutt here as well.

      35.     Magistrate Judge Dale's fee decision in *Idaho Rivers United v. Probert*,

No. 3:16-cv-102-CWD, above, was supported by my own declarations and numerous

other declarations submitted by other experienced practitioners in the District of Idaho to

support the hourly rates requested and approved there for my legal services, including the

following:

- Declaration of Deborah A. Ferguson, *Idaho Rivers United v. Probert*, No. 3:16-cv-102-CWD, ECF Docket No. 69-3;

- Declaration of Murray D. Feldman, *Idaho Rivers United v. Probert*, No. 3:16-cv-102-CWD, ECF Docket No. 69-4;

- Declaration of Christopher H. Meyer, *Idaho Rivers United v. Probert*, No. 3:16-cv-102-CWD, ECF Docket No. 69-5;

- Declaration of David Z. Nevin, *Idaho Rivers United v. Probert*, No. 3:16-cv-102-CWD, ECF Docket No. 69-6;

- Declaration of Howard A. Belodoff, *Idaho Rivers United v. Probert*, No. 3:16-cv-102-CWD, ECF Docket No. 69-7;

- Second Declaration of Murray D. Feldman, *Idaho Rivers United v. Probert*, No. 3:16-cv-102-CWD, ECF Docket No. 72-2.

These declarations further support the requested rates here.

      36.     Magistrate Judge Dale's fee decision in *Idaho Rivers United v. Probert*,

No. 3:16-cv-102-CWD, above, also specifically rejected arguments that the hourly rates I

requested were too high for the District of Idaho and were not appropriate for

experienced environmental practitioners such as myself.

      37.     Plaintiff reserves the right to submit supplemental declaration(s) for the

additional time that I and/or other counsel may have to spend in connection with this fee

LUCAS DECLARATION -- 12

motion; and will request the Court to include such additional fees or expenses in addition to the amount above.

**Litigation Expenses**

38.     Plaintiff's counsel also incurred litigation expenses in this matter, including the $400 court filing fee plus $82.56 in postage and delivery costs.

39.     On November 26, 2019, I filed a Bill of Costs with this Court (ECF No. 46), which identified the $400 filing fee as a taxable cost for this matter.  Plaintiff requests that the Court award the $400 filing fee as well as the copying costs identified above, in addition to the attorney fee award requested above.  Of course, ICL does not seek a double recovery of the filing fee, if the Bill of Costs is separately granted and paid.

**Total of Requested Award**

40.     To summarize from above, Plaintiff seeks an award of attorney fees and litigation expenses incurred to date in this matter as follows:

| | |
|---|---|
| TOTAL ATTORNEY FEES | $ 111,129.00 |
| LITIGATION EXPENSES | $      482.56 |
| **TOTAL FEES AND EXPENSES** | **$ 111,611.56** |

41.     In my opinion, the total requested attorney fees and litigation expenses, as set forth above, were reasonable and necessary for the successful prosecution of this case, and should be awarded in full by the Court.

I declare under penalty of perjury pursuant to the laws of the United States that the foregoing is true and correct.  Executed this 29th day of November, 2019 at Boise, Idaho.

*/s/ Laurence ("Laird") J. Lucas*
Laurence ("Laird") J. Lucas